Judge Owsley
delivered the opinion of the Court.
On the fifth of October, 1821, Burgess, with John S. Anderson, his surety, executed to Wm. Harrison his note for $1,136, payable on the first of July, 1823. On the 11th of January proceeding the execution of this note, said Burgess, together with John Harrison as a co-surety, became the sureties of Wm. Harrison in a replevin bond, to Hazle Petree, for the sum of $404 09 1-2. After the execution of the $1136 note, he, the said Burgess, became the surety for Wm. Harrison, in a replevin bond, to a Mr. Shaw, for about $800; and to *418 enjoin this demand, at the suit of the said Wm. Harrison against Shaw, he, together with Win. Murrell, became sureties for the said Wm. Harrison, in an injunction bond. The said Burgess and Murrell also became sureties for the said Wm. Harrison, to the branch bank of the Commonwealth, for 'about $200. Murrell having thus bound himself in these two last debts, for the said Wm. Harrison, claimed of him an indemnity, and for that purpose, Harrison deposited in his hands the aforesaid note of $1136, which he held on Burgess and Anderson, and Murrell at the same time gave Wm. Harrison a writing, reciting the deposit and for what the noli; was pledged, and engaging that the note should be delivered up and be restored to Harrison or his order, so soon as the said Murrell was. released from •his engagements for the said Harrison. This writing ivas given on the 23d of October, 1821.
On the 29th of the same month, said Wm. Harrison having become embarrassed and being imprisoned by other creditors, assigned to Benjamin Harrison, in trust for those creditors, the aforesaid writing of Murrell, and all his interest in the aforesaid note deposited in the hands of Murrell, and thereby obtained his release from prison.
Benjamin Harrison having obtained this assignment, gave Murrell notice thereof, and required him not to deliver the note of Burgess and Anderson to any other person except himself, whenever he shoidd he ready to deliver it by being released from his engagements for said Wm. Harrison.
After this the injunction of Wm. Harrison against Shaw was dissolved, and Burgess paid up $336 of Shaw’s debt. Benjamin Harrison paid, through the hands of Burgess, $126 thereof, and the residue was nuuta out of the sale of Wm. Harrison’s property, and Murrell was thus released for the said security-ship for Shaw’s debt. Burgess then paid to the Bank of the Commonwealth, the debt of Wm. Harrison, and Murrell was thereby released from all bis responsibilities for said Wm. Harrison. Having paid thus much for Wm. Harrison, and being bound for him in the replevin bond to Petrce, Burgess ap *419 plied to Wm. Harrison and obtained from .him, on the 6th of May, 1822, an order on Murrell to deliver up to him his, Burgess’ note, in which Anderson was surety, and on application to Murrell, the note was forthwith delivered up to B.urgess.
Ben. Harrison’s bill against Burgess, Murrell and W. Harrison.
Answer of-W Harrison and Murrell.
Burgess’ answer.
Decree of th$ circuit court, dismissing B, Harrison’s bill.
W. II. assigned the bond of B.toM.to indemnify him against securityships, and took bis obligation to restore it -when released, which he assigned to B. H. to indemnify him; afterwards M. being released, on the order of W. H. delivered to B. his bond— the remedy of B. H. is in equity.
*419 Benjamin Harrison then filed this hill against Wm. Harrison, Murrell and Burgess, claiming this note or the proceeds thereof, and that Burgess or Murrell shall account for the amount thereof. He also made Anderson defendant.. But as there is no process against him, or appearance, and he is only a surety, he need not he further noticed.
Wm. Harrison and Murrell answered; hut their answers disclose nothing different,from the foregoing facts.
Burgess answered,, relying on his payment for Wm. Harrison and his remaining engagement, to. Petree, and alleging that his co-security in that demand is insolvent; and in response to the-bill, expressly denies that he- had any notice of the assignment to Benjamin Harrison, or his interest, in his, Burgess’ [note, until after he had made the agreement to discharge it with Wm. Harrison, and received from him the order on Murrell to deliver it. up, and had actually obtained the note from Murrell., He claims creditsfor the payments of $860 to Shaw,, and $192 to the Bank of the Commonwealth, in the paper of that Bank; and also, the debt to Petree of $414, for which he is still bound and will have to pay. The balance of his own note he professes himself willing to pay, to whomsoever it. may of right be due. The answers all rely on the. want of equity in the bill.
The court below dismissed the bill with costs, and to reverse that decree, this writ of error is prosecuted. 1
We cannot perceive the principle upon which tlie court below proceeded in refusing to give any ¡relief and in entirely dismissing the bill. It is not even pretended by Burgess that lie owes no part of the note which he gave to Wm. Harrison, and which, by an arrangement with Harrison, he obtained the *420 possession of, after the said Harrison, by assigning the writing which he held upon Murrell to Benja-' min Harrison, had disposed of his interest in the note to the complainant. The assignment of the writing held upon Murrell by Win. Harrison, to Benjamin Harrison, cannot have transferred the legal right of action on the note of Burgess, were that note now in the possession of Benjamin Harrison, but that assignment in connection with the writing given by Murrell, undoubtedly passed to Benjanain Harrison an equity in the residue of the note on Burgess, alter the debts for which Murrell was bound for Wm. Harrison, were satisfied. If, however, the note of Burgess was in the possession of Benjamin Harrison, it might not, possibly, have been competent for him to have resorted to a court of equity for the purpose of compelling Burgess to make payment. The assignment, though it transferred but an equity, gave to Benjamin Harrison an authority to sue in the name of Wm. Harrison, on the note of Burgess, and possessing such authority, it might, if the note was in his possession, have been incumbent upon Benjamin Harrison to have brought suit at law upon the note, and not to have resorted to a court of equity,
Whore a person having a lien on, or an equity in a bond, has the possession, he may maintain an action for his use in the obligees name, but if obligee by collusion with obligor, obtain the bond, the remedy is by bill in equity.
Obligor shall be allowed all payments made to ohligee, and all liens obtained on the fund, before notice of the assignment.
*420 But the note was not in the possession of Benjamin Harrison; it had been lifted by Burgess from Murrell, with whom it had been deposited, so that it was impossible for any action at law to have been maintained against Burgess on the note, and of course the only remedy which was in the power of Benjamin Harrison, to recover from Burgess the amount due from him, was in equity. There is, therefore, no pretext for objecting to the jurisdiction of the court, and the decree dismissing the bill cannot, on that ground be sustained.
As Burgess admits that he is owing a balance- ou the note, the complainant is undoubtedly entitled to a decree against him to some amount. To whatever sum Burgess is liable, the complainant, through the assignment by Wm. Harrison, is justly entitled, and should of course have a decree for so much against Burgess. The amount for which Burgess is liable *421 must, however, be what he has in his answer alleged it to be, the balance of the principal and interest of the note which he gave to Wm. Harrison, after deducting the sums paid by him to Shaw, and the Bank of the Commonwealth, and the debt for which he is hound to Petree, as the surety of said Wm. Harrison. Under an agreement with Wm. Harrison, before he had any notice of said Harrison’s assignment to the complainant, Burgess had obtained the possession of his note, out of which those demands were to be satisfied; and after having by a fair and bom fide contract witli Vv'illiam Harrison, i to whom his note was given, discharged part of the note and actually taken it in, Burgess can never, consistently with the principles of moral justice and equity, be decreed, to again account for what he had so discharged, to an assignee of the note, of whose assignment he was ignorant when he took up his note. The decree against Burgess ought, therefore, to be for the residue of the note and interest, after deducting those demands.
Held M. was-not responsable, under the circumstances, for deli voring to the obligor the obligation which had been pledged to him, after notice of obligees assignment of his, the bailee’s obligation, to restore it, on being released.
With respect to Murrell, we perceive no just cause for any decree against him. By the writing which he gave to Wm. Harrison, when the note was deposited with him, and which was afterwards assigned by said Harrison to the complainant, it is true, Murrell engaged to return and redeliver the note on Burgess to Wm. Harrison or his order, and that instead of doing so, he appears to have delivered the note to Burgess after he was warned of the assignment of his engagement by Wm. Harrison to the complainant. But it should he recollected that the note was not delivered by Murrell to Burgess, until after Burgess, by an agreement with Wm. Harrison, had contracted for the discharge of most of the note; and we have already seen that for the residue of the note Burgess is still liable, and-the complainant is entitled to a decree against him for that amount. It is not, therefore, perceived how the complainant can have been prejudiced by Murrell’s having delivered the note to Burgess. It was not the receipt of the note by Burgess that gives him a right to any deduction from the original amount, but it is the agreement between Burgess and Wm. Harrison, be *422 fore notice of the complainants assignment, (bat confers upon Burgess, a good defence for so much as ]¡¡ive ga;t] ]ie s]iould not be decreed to pay, ai:d that agreement would have been equally availing to Burgess, bad the note not been received by him, but delivered over by Murrell to the complainant. The delivery of the note to Burgess, therefore, lias wrought no injury to the complainant, and of course can have conferred no right on him to a decree against Murrell.
idi'sontMlllSÍ
Triplett, for plaintiff; Mayes, for defendants.
From so much of this opinion as refuses relief aSaiilst ^urreMj Judge Mills dissents.
The decree must be reversed with cost, the canse remanded to the court below, and a decree there entered in conformity with the principles of this opinion.